Ricky Charles MALOY, Appellant,

v.

The STATE of Texas, Appellee.

No. 55794.

Court of Criminal Appeals of Texas, Panel No. 1.

June 13, 1979.

Douglas H. Parks, Dallas, for appellant.

Henry M. Wade, Dist. Atty., William M. Lamb and James D. Burnham, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before ONION, P. J., and ROBERTS and W. C. DAVIS, JJ.

### OPINION

W. C. DAVIS, Judge.

This is an appeal from a conviction for murder wherein the punishment was assessed at ninety-nine (99) years. The sufficiency of the evidence is not challenged. The record reflects that appellant shot the deceased, a convenience store clerk, while in the course of robbing him at a Stop-and-Go convenience store.

A confession of guilt was introduced at trial which constituted the major portion of the State's case against appellant. In his confession, appellant admitted:

"On Thursday night, May 20, 1976, Henry Lee Hines came to my apartment and we played some records. While we were playing records, Henry asked me if I wanted to make some money. I said I needed some money and Henry told me about a Stop and Go Grocery store on Lemmon Avenue and suggested that I rob the store. Henry said that he couldn't rob the store because he went in the store all the time and the guy in the store that worked there knew him. Henry gave me a .32 calibre pistol that was chrome plated and told me to use the pistol to rob the guy at the Stop and Go. I took the pistol from Henry and Henry told me to wait until I got in the store and to cock the pistol to scare the guy who worked there. Henry told me that he would wait across the street and that we would run to his apartment when I finished robbing the guy. I went in the store and cocked the pistol and told the guy that this was a robbery. The guy gave me a bunch of money and laid some of the money on the counter then leaned over behind the counter. I could see the top of the guy's head and when the guy started to raise up, I had the gun pointed at him. I thought the guy probably had a pistol behind the counter and when he raised up, it scared me and I jumped and the pistol went off and shot the guy in the top of the head. I grabbed the rest of the money off the counter and ran out the front door. Henry was waiting for me across the street on Lemmon. We ran to his apartment and counted the money. We had $76.00. I kept $40.00 and Henry took $36.00. I told Henry that I shot the guy in the store and Henry told me to forget about it and then he took me home. I gave the pistol back to Henry before he took me home."

In his first ground of error, appellant contends that the trial court erred in admitting this confession into evidence, as it was obtained as a result of an illegal, warrantless arrest.

The record reflects that on May 24, 1976, three days after the instant offense, Police Officer W. M. Parker executed an affidavit for a search warrant for the residence of Henry Hines, in order to seize a .32 caliber chrome plated automatic pistol. The affidavit recited that Officer Parker had re-

ceived information from a reliable informant that:

"Henry Hines resides in apartment 206 of the Residence Apartments located at 3328 Cedarplaza Lane in the City of Dallas. That this informant has been inside this apartment within the past eighteen (18) hours and has seen Henry Hines and a black male approximately 28 years of age and a black male approximately 25 years of age sitting in this apartment and discussing the robbery of the Stop and Go Grocery Store which is located at 5328 Lemmon Avenue. That while in this apartment, Henry Hines told this informant that his (Henry Hines') pistol was used to kill the clerk in the store (John Robert Baustista) while the robbery was being committed. That while inside this apartment, Henry Hines showed this informant a chrome plated .32 automatic pistol which he (Henry Hines) had tucked inside the waistband of his (Henry Hines') trousers."

The affiant then stated that he personally ascertained that a robbery at that Stop and Go Grocery had occurred a few days earlier and that during this robbery the store clerk, John Robert Baustista, was killed with a .32 caliber pistol. The affidavit also stated that the informant had described for him the make, model, year, color and license plate number of Hines' car. Officer Parker had then checked at the address given and observed this vehicle parked there. He then checked the License Issuance and Driver Records Division of the Department of Public Safety and determined that this vehicle was registered to Henry L. Hines, of the above address.

A warrant was issued that evening. According to the testimony, Officers Parker and Landers executed the warrant that night, on the residence of Hines, which was about one and a half blocks from the Stop and Go. The .32 caliber pistol was found and Hines was arrested and taken to the police station. Upon questioning Hines, the officers first learned of appellant's involvement in the offense. Hines made a statement, which was not introduced into the record, which implicated appellant as the

killer. Further, the officers learned from Hines that the .32 caliber pistol, belonging to Hines, had been used in the commission of the offense. Hines gave the officers appellant's name and address and told them that he was about to "bug out" or flee the city soon. Hines' statement was taken sometime after midnight.

■ The officers then left the police station, heading towards the address which Hines had given them. It was approximately 3:00 to 3:30 a. m.; the testimony is undisputed that there was no magistrate available at that hour. The officers proceeded to appellant's residence, where they found him and arrested him at about 3:30 a. m. He was taken to the police station, where he later made a statement admitting to the murder.

Article 14.04, Vernon's Ann.C.C.P. provides:

"Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without [a] warrant, pursue and arrest the accused."

We conclude that, under these circumstances, the officers were justified in arresting appellant without first procuring a warrant. The officers had within their knowledge all of the information contained in the affidavit for the search warrant, which described the first-hand observations of the informant. Hines by his own statements had, to some extent, implicated himself in the offense; his inculpatory statements were made in the presence of the informant. Further, at least two other persons had been present in Hines' apartment when he made statements connecting himself to the robbery-murder. The informant had seen the .32 caliber pistol in Hines' possession and, according to the informant, Hines had specifically said that that gun, belonging to him, had been used to kill the store clerk, apparently mentioned by name.

128

Officer Parker had, himself, previous to his arrest of appellant, investigated and partly corroborated some of the information related by the informant. He had determined that, indeed, a robbery had occurred at the named store and that the named store clerk had been murdered during the course of this robbery; further, Officer Parker ascertained that the clerk had been killed with a .32 caliber pistol, the same kind as that seen in Hines' possession. The officer had further verified details concerning identification of Hines' automobile and address.

Upon executing the search warrant and finding Hines at his address, in possession of the .32 caliber pistol, the officers learned certain information from Hines. From Hines, the officers learned appellant's name and address, and that Hines had loaned the .32 caliber pistol to appellant, and that appellant had committed the robbery and killed the store clerk, and that appellant was about to "bug out" or flee.

Given the detailed information known to the officers, many portions of which were independently verified, the officers, after finding Hines in possession of the pistol, were justified in concluding that, under these circumstances, Hines was a "credible person," or a person worthy of belief, within the meaning of Article 14.04, supra. Hines' statements to the officers implicated appellant and provided information about appellant's intent to escape; thus, the officers acted reasonably and in accordance with Article 14.04 in determining that the immediate apprehension of appellant was necessary. Thus concluding that the immediate apprehension of appellant was necessary, and there being no magistrate available at that hour, the officers were justified in arresting appellant without a warrant. We find the evidence sufficient to show that the police officers had probable cause to arrest appellant and that, under these circumstances, they were justified in doing so without a warrant. See *Jones v. State,* 565 S.W.2d 934 (Tex.Cr.App.1978); *Tarpley v. State,* 565 S.W.2d 525 (Tex.Cr.App.1978); *Loving v. State,* 559 S.W.2d 363 (Tex.Cr. App.1977); *Scott v. State,* 531 S.W.2d 825

(Tex.Cr.App.1976); *Reed v. State,* 522 S.W.2d 916 (Tex.Cr.App.1975). Thus, it appears that appellant's confession, made after his arrest, was not obtained as a result of an illegal arrest and detention. Appellant's first ground of error is overruled.

In his second ground of error, appellant contends that the trial court erred in admitting his confession into evidence, as there was no compliance with Article 15.17, Vernon's Ann.C.C.P.

Article 15.17 provides:

"In each case enumerated in this Code, the person making the arrest shall without unnecessary delay take the person arrested or have him taken before some magistrate of the county where the accused was arrested . . . [whereupon the magistrate shall warn the person arrested of his rights]."

The record reflects that appellant was not taken before a magistrate prior to his making a confession of guilt. However, appellant was taken into custody at 3:30 a. m., and the testimony of the officers was that no magistrate was available at that hour. The confession was given within about an hour of the arrest.

■ The fact that appellant was not taken before a magistrate prior to making a statement does not vitiate a confession that is otherwise properly obtained. Even an unreasonable delay in bringing an accused before a magistrate, of which we have no evidence here, will only render a confession inadmissible upon a showing of some causal connection between the delay and the making of the confession. *Myre v. State,* 545 S.W.2d 820 (Tex.Cr.App.1977). There was no evidence of any unreasonable delay in the instant case, nor was there evidence of a causal connection between appellant not being taken before a magistrate within an hour of his arrest and the confession which he made. See *Gollin v. State,* 554 S.W.2d 683 (Tex.Cr.App.1977); *Hester v. State,* 544 S.W.2d 129 (Tex.Cr.App.1976); *Myre v. State,* supra. No error is shown.

■ Appellant further contends that the confession is inadmissible as there was no

compliance with Article 38.22, Vernon's Ann.C.C.P. This statute, prior to current amendments, provided that:

"1. The oral or written confession of a defendant made while the defendant was in jail or other place of confinement or in the custody of an officer shall be admissible if:

\* \* \* \* \* \*

c. it be made in writing to some person who has warned the defendant from whom the statement is taken [of his statutory and constitutional rights] . . ."

Appellant contends that since he did not receive the required warnings from the person to whom he made the confession, his statement was inadmissible at trial. The record reflects that appellant was arrested by Officers Parker and Landers, who transported him to the police station. There, Officer Parker read appellant his *Miranda*[1] rights, and asked him if he understood them, to which appellant stated that he did. Both officers were present at that time. Officer Landers left for a short period of time, and returned to fill out his arrest report and the papers necessary in order to book appellant into the jail. Officer Parker was not present while this was being done. While Landers was filling out his report, "one thing led to another" and appellant confessed to having committed the instant offense. Landers wrote appellant's statement in longhand, and then took it to be typed. After it was typed, both officers returned, and Parker read appellant his rights again, stopping after each one to determine if appellant fully understood.

Under these circumstances, we hold that the statement was taken in compliance with Article 38.22, supra. The fact that Landers' partner, in his presence, actually read the warnings to appellant first, with Landers alone taking the statement, does not render the confession inadmissible under Art. 38.-22, supra. See *Sutton v. State,* 166 Tex. Cr.R. 580, 317 S.W.2d 58 (1958). No error is shown and this ground of error is overruled.

In his third ground of error, appellant contends that the trial court erred in refusing to grant his motion for a mistrial, after improper argument by the prosecutor. At the punishment phase of the trial, the prosecutor argued:

"And what do you think [the deceased] thought as he laid down there on the floor and felt the blood running out of him, because this wasn't instantaneous; he had enough time to reach up there with his hand and feel where he'd been hit . . ."

Appellant objected that the argument that death was not instantaneous was outside the record. The trial court sustained the objection and instructed the jury to disregard the statement.

We find no error; the prosecutor's statement was a reasonable deduction from the evidence, considering the testimony that the deceased was shot in the head and was discovered lying on the floor with blood on his hands. See *Cain v. State,* 549 S.W.2d 707 (Tex.Cr.App.1977); *Ramirez v. State,* 543 S.W.2d 631 (Tex.Cr.App.1976); *Alejandro v. State,* 493 S.W.2d 230 (Tex.Cr.App. 1973). This ground of error is overruled.

The judgment is affirmed.

---

1. *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).