**Michael Wayne EUBANKS, Appellant,**

v.

**The STATE of Texas, Appellee.**

No. 01–81–0559–CR.

Court of Appeals of Texas,
Houston (1st Dist.).

April 15, 1982.

Michael Thornell, Houston, for appellant.

John Holmes, Houston, for appellee.

Before EVANS, C. J., and DOYLE and STILLEY, JJ.

## OPINION

DOYLE, Justice.

Appellant was convicted of capital murder by a jury and punishment was assessed at life imprisonment.

In ground of error one, the appellant contends that the trial court erred in admitting his written statement or confession into evidence. Appellant requested and received a pre-trial hearing to determine whether or not his statement or confession was obtained illegally. A number of witnesses testified on behalf of the appellant and the State. Appellant's defensive theory was that he was heavily drugged, tired and emotionally overwrought to the extent that he did not voluntarily give a statement and that the police used coercive tactics in extracting the confession, rendering the confession involuntary.

At the hearing on the voluntariness of appellant's written statement, Detective J. R. Thornton of the Houston Police Department testified as follows: Thornton said he first saw appellant at a Gulf gas station late on the evening of October 4, 1977. Thornton told the appellant that he was under arrest on a bad check warrant and gave him his statutory *Miranda* warning from the "blue card." Thornton then stated that the appellant was warned more than once prior to any findings concerning the events made the basis of the charge against him in this case. Thornton testified that appellant's signature appeared on the last three pages of the appellant's written statement, that the date and time shown on the last page of the statement were written at the time of the signing of the statement, and that Thornton saw the appellant sign the statement. No physical or mental coercion was used against appellant to secure his signing of the statement and no promises were made by anyone to induce the appellant to sign the statement. After the interrogation, the appellant was given every opportunity to make phone calls. Appellant did not appear to be under the influence of any kind of drugs at the time of the making of the statement. He was coherent and in complete control of his mental and physical faculties.

In support of his contention that he was under the influence of drugs at the time he signed the confession, the appellant, testifying on his own behalf, stated that he was arrested at around midnight on October 4, 1977, at a local pool hall. He further stated that he had consumed a considerable amount of alcohol and had an injection of crystal methedrine intravenously. Early in the day, he testified that he smoked four or five marijuana cigarettes and had four or five beers. Thereafter, he injected more drugs and testified that the drugs were the type of speed that makes your body react fast and also peculiarly. The appellant and a co-defendant, Michael Pitman, went to an apartment party and drank beer and smoked marijuana. He left the party and went to the pool hall and, after a short stay there, he went to a doughnut shop where he took a third injection of speed. Subsequently, when he was placed in a police car, he was immediately questioned about the murder. He said that no warnings of any type were read and that he was not involved in any way in the murder. He further stated that he did not know that he was in serious trouble until he was taken to a closed Gulf gas station. The appellant then noticed that police cars were around and in and out of the service station where he was under custody. He said he had a syringe in his sock which he placed under the seat on the floor of the patrol car. He said he was interrogated by Detective Thornton, and later by still another detective, while all the time he denied any knowledge of the murder. The appellant said he really had no recollection of how long he was interrogated at the Gulf station, but that the questioning never ceased. He said he was still very high on the drugs and alcohol. He testified he was given some papers and told to verify some mistakes by putting his initials beside each one. The appellant also stated that he signed a consent to search form, because he was told that if he didn't sign, a legal search warrant would be procured. All the while he stated that he was still feeling the effects of the drugs and the alcohol and that he was disoriented. After a lengthy drive, the appellant said he was taken back downtown and there interrogated some more by the homicide officers. He stated that around dark he was placed in a cell at the city jail. During this time, he had not eaten, and he had not slept since the night of October 4. Sometime on the morning of October 6, the appellant stated that he was advised that he had been charged with capital murder and transferred to the county jail.

■ It is an established principle of law that unless a confession is voluntarily given and is taken in compliance with the *Miranda* warning, it will not meet constitutional standards. In determining whether an accused's confession is obtained by illegal means, the court will consider a number of factors, among which are the elapsed time after the arrest or detention and the presence of any circumstances which suggest or reveal official misconduct. *In the Matter of L.R.S.*, 573 S.W.2d 888 (Tex.Civ.App.—Houston [1st Dist.] 1978, no writ), this court found the illegal detention of the accused at the police station rendered his confession inadmissible, despite an appropriate warning.

■ The trial court, as the fact finder, determines whether the detention is illegal at a hearing on the voluntariness of a written statement or confession. The evidence reviewed must be clearly sufficient to support the findings of fact and the conclusions of law made by the trial court concerning the voluntariness of appellant's written statement and its compliance with article 38.22, V.A.C.C.P. *White v. State*, 591 S.W.2d 851, 860 (Tex.Cr.App.1979). The trial court was free to believe any, or all, or a part of, the testimony of both the witnesses for the State and the appellant's testimony as to whether or not the confession was voluntarily given. The trial court had before it ample evidence upon which to base its opinion that the confession signed by the appellant was freely and voluntarily given.

The appellant cites *Ochoa v. State*, 573 S.W.2d 796 (Tex.Cr.App.1978) as authority for the fact that the confession in this case should be declared involuntary. In *Ochoa*,

the court had before it a question of whether police officers had continued to interrogate the accused after he told him that he thought he ought to talk to an attorney before answering any question or signing anything. It was held that whenever a suspect indicates in any way that he desires to invoke his right to counsel, the questioning must cease, and because it didn't cease in *Ochoa* the court ordered the case reversed. The evidence in our case does not show that the appellant asked to speak to counsel or that he did not wish to sign the statement as given to him.

Appellant further argues that there was some causal connection between the delay in taking him before a magistrate and the making of a confession. He cites *Maloy v. State*, 582 S.W.2d 125 (Tex.Cr.App.1979) in support of his contention. In *Maloy*, the Texas Court of Criminal Appeals affirmed the conviction based upon a written statement which was given after Maloy had been warned by an officer who took the statement, but never took Maloy before a magistrate. In affirming this conviction, the court said that unless it could be shown that there was some causal connection between the delay and the giving of the confession the delay was immaterial. In the case before us there appears nothing of record to indicate that the appellant's written statement had any causal connection between the failure to take him before a magistrate prior to the giving of the written statement in question. There can certainly be no doubt that he was given his legal warnings by several officers prior to the making of the statement. In numerous cases the periods of delay before taking an accused before a magistrate have been longer than in the instant case, but the convictions in those cases were upheld by the Court of Criminal Appeals. *Short v. State*, 511 S.W.2d 288 (Tex.Cr.App.1974); *Moore v. State*, 542 S.W.2d 664 (Tex.Cr. App.1976). In *Moore* the court laid down the test for determining whether or not the failure to take a suspect before a magistrate would be fatal. The court stated that the trial court must find that but for the failure to take the suspect before a magistrate, he would not have given the written statement. We can find no such showing by the appellant in the case at bar. The appellant's ground of error number one is overruled.

Appellant contends in ground of error two that the trial court erred in overruling his motion to exclude the death penalty as possible punishment because of unequal protection. Specifically, the appellant complains that the Texas death penalty statute discriminates against men, while women are virtually beyond its scope.

■ A violation of the equal protection clause of the Fourteenth Amendment is not proven by showing the death penalty is enforced against some and not others. Neither is a violation proven by showing that prosecutorial discretions exist because of lack of standards in determining individual prosecutions. There must be a showing of actual and purposeful discrimination against the individual himself or against a suspect classification in which he falls, with no proper justifying governmental purpose in such classification. *Fearance v. State*, 620 S.W.2d 577, 581 (Tex.Cr.App.1981); *Jurek v. State*, 428 U.S. 262, 96 S.Ct. 2950, 49 L.Ed.2d 929 (1976); *Super X Drugs of Texas, Inc. v. State*, 505 S.W.2d 333 (Tex.Civ. App.—Houston [14th Dist.] 1974, no writ).

■ The fact that a law may not be invoked against others does not affect its constitutionality merely because it has been invoked against persons such as the appellant. Although the jury found the appellant guilty of capital murder, they answered "No" to the second special issue at the punishment phase of the trial. The appellant was therefore sentenced to life imprisonment as required by law.

In light of the punishment assessed, appellant has no standing to challenge the constitutionality of the capital murder statute since he did not become a part of the identifiable group of persons sentenced to die by lethal injection. No harmful error is shown. Ground of error two is overruled.

In ground of error number three the appellant alleges that the trial court erred in overruling his motion to dismiss the indictment because the appellant was not taken before a magistrate after arrest, was denied a probable cause hearing, and was denied an examining trial.

There is evidence in the record that appellant was accorded a 24-hour probable cause hearing on October 6, 1977, and a 48-hour hearing to determine probable cause on October 7, 1977.

The violation, if any, of the requirements of article 15.17, V.A.C.C.P., does not invalidate a confession which was voluntarily given after statutory warning requirements were complied with. *Von Byrd v. State*, 569 S.W.2d 883 (Tex.Cr.App.1978), cert. denied, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073.

It is well established in the State of Texas that the return of an indictment terminates all right to an examining trial. *White v. State*, 576 S.W.2d 843 (Tex.Cr.App. 1979). The failure to grant an examining trial does not affect the validity of an indictment. *Gooden v. State*, 425 S.W.2d 645 (Tex.Cr.App.1968). Ground of error three is overruled.

By his fourth ground of error the appellant avers that the trial court erred in denying the appellant's challenge for cause to a venireman who was an assistant district attorney. Articles 2133 and 2134, V.A.C.S., set forth the qualifications for jury service in Texas. Article 35.16 V.A.C.C.P. recites the standards for challenges for cause in Texas. The record shows no reason why William Scott Carpenter, the venireman in question, should have been automatically disqualified to serve as a juror in the instant case. Mr. Carpenter stated that the mandatory punishment of life or death would not affect his deliberations, and that he was not opposed to the death penalty in a proper case. Although he had been employed by the District Attorney's office for seven months, he testified that he had no personal knowledge of this case, and that he had no prior knowledge of this case from any source. He stated that he was familiar with the concept of the presumption of innocence and the State's burden in a criminal case, and the defendant's right not to testify. He felt he could follow the law concerning all of those principles. Under further questioning Mr. Carpenter stated that his association with the district attorney's office would have no bearing whatsoever on how he voted in the case. The defense then challenged Mr. Carpenter for cause, which the trial court denied.

Appellant cites no authority, cases or statutes, in support of his contention. The failure by the defendant on appeal to brief the ground of error or to cite any authority, presents nothing for review. *McWherter v. State*, 607 S.W.2d 531 (Tex. Cr.App.1980). Appellant's fourth ground of error is overruled.

The judgment of the trial court is affirmed.

EVANS, C. J., and STILLEY, J., also sitting.