**Donald Joseph HALL, Appellant,**

v.

**UNITED STATES of America,
Appellee.**

**No. 25827.**

United States Court of Appeals
Fifth Circuit.

Nov. 12, 1969.

Thomas M. Haas, Mobile, Ala., for appellant.

Don Conway, Asst. U. S. Atty., Mobile, Ala., Vernol R. Jansen, Jr., U. S. Atty., for appellee.

Before GEWIN and GODBOLD, Circuit Judges, and CHOATE, District Judge.

GODBOLD, Circuit Judge:

The appellant was convicted by a jury on a single-count indictment charging interstate transportation of a stolen automobile and sentenced to three years. The conviction must be reversed for improper and prejudicial statements made by prosecutors during oral argument.

The reversible remarks covered five areas: statements that appellant had tampered with witnesses; a statement by a prosecutor of his personal belief concerning a controverted issue of fact, i. e., whether FBI Agent Degnan had forced witness Beck to give a statement; a personal voucher by the same prosecutor that FBI Agent Degnan was a person of integrity; a statement that "we [the United States Attorney's office] try to prosecute only the guilty;" and a characterization of appellant as a "hoodlum."

In analyzing questioned prosecutorial forensic conduct there are many areas of possible concern. Without attempting to spell out and categorize the full spectrum, a number of areas of inquiry can be stated that are helpful in reaching a decision.

Are the prosecutor's statements made for the purpose, or do they have the effect, of getting before the jury for its consideration extrinsic evidentiary matter? Does the extrinsic matter consist of statements by the prosecutor of matters asserted as fact though not in evidence? Or does the extrinsic matter consist of statements which reasonably lead the jury to believe that there is existent evidence not available to them but the content of which is unrevealed?

Does the extrinsic matter, whether its content is delineated or its existence merely implied, tend to show the accused guilty of the offense charged? Or does it tend to persuade that he is guilty of some other offense than that charged? Or that he simply should be put away as a social undesirable? Does it go only to his credibility? Is the subject-matter of the remarks just abstract name-calling, not really related to evidence at all?

Some of these questions go to the content and purpose of the statements made. Others attempt to search out the extent to which the questioned conduct impinges on the procedural protections which the law has erected around the trial itself. Others center around the peculiar impact which the prosecutor's remarks may have upon the particular accused.

In considering the impact of what is said the court also must be concerned with the great potential for jury persuasion which arises because the prosecutor's personal status and his role as a spokesman for the government tend to give to what he says the ring of authenticity. The power and force of the government tend to impart an im-

plicit stamp of believability to what the prosecutor says. That same power and force allow him, with a minimum of words, to impress on the jury that the government's vast investigatory network, apart from the orderly machinery of the trial, knows that the accused is guilty or has non-judicially reached conclusions on relevant facts which tend to show he is guilty.

1. The charge of witness tampering.

The first prosecutor to argue commenced his remarks with inflammatory statements directed not to appellant's guilt of the offense charged but to assertions that appellant had tampered with government witnesses. One of the government witnesses was Beck, a friend of appellant. He had pleaded guilty to stealing the automobile appellant was charged with transporting, and was on probation. Appellant testified that about a week before the trial he went to see Beck to try to get him to come to the trial. He stated Beck told him that although appellant had nothing to do with the car he feared to so testify because it would "hurt his probation." Appellant testified that Beck had been under extensive psychiatric care, and that during their conversation Beck went berserk, had a fit and foamed at the mouth, that he tried to take Beck to the hospital but was unable to get him in the car, and he then called Beck's father, a pharmacist. As far as appellant knew Beck was still in the hospital at the time of trial.

This testimony was the only evidence relating to Beck's nonattendance at the trial. There was no evidence that appellant did or said anything improper during his visit to Beck or that Beck was not ill or not legitimately confined to the hospital. There was not a whisper of evidence that Beck was afraid of appellant.

The first words of argument by government counsel were these:

MR. CONWAY: May it please the Court, gentlemen, I am sure you sense both the Prosecutors' anger in this case and I hope the evidence leaves you with anger as it does us because I tell you there is nothing worse than messing with witnesses. And that is what the evidence shows very plainly that this defendant has done. Don't make any mistake about this, Gary Wayne Beck is scared to death of this man—scared to death of him. So much so that he just has a fit and goes to the hospital.

Defense counsel objected. The trial judge stated that he did not remember evidence that Beck was afraid of the defendant and admonished the prosecutor not to go beyond the evidence. He did not rule on the objection so far as the primary charge of tampering was concerned and gave no cautionary instruction to the jury. In the next breath the prosecutor picked up the cudgel again with these remarks:

I don't know what business [appellant] has got talking to him [Beck] anyway. He is under subpoena to come over here to testify, and after Mr. Hall talked to him and funds have been advanced to him, he can't come over here, he has to go to the hospital.

Of course, the government does not have exclusive pretrial access to witnesses.

Reed was another government witness. As to him the prosecutor said:

Now, gentlemen, I hope—I just hope one of you saw Mr. Reed when he walked in here wink at Mr. Hall because that tells the whole story right there. He winks at his buddy. Look out, old buddy, I am going to help you. That angers us. I can't help it, because we are public servants and we care about our duty. We try to prosecute the guilty and it disturbs us to see things like that. We want to try the cases with the witnesses, we don't want them messed with and fooled with like that.

The defense objected again. The court again did not rule but admonished the prosecutor to stick to the evidence.

Reed too was a friend of appellant. But there was nothing—literally nothing—tending to show that appellant had anything to do with Beck's wink or that it carried the implication given it by counsel.

In Weathers v. United States, 117 F.2d 585 (5th Cir. 1941) the prosecutor stated to the jury that defendant's divorced wife, a government witness, had gotten on the stand and deliberately perjured herself, and then added: "It was plain to be seen that the defendant, or defendant's counsel or somebody, had gotten to this woman before the time she delivered that paper to us and the time she was called to testify." This Court reversed.

■ The issue with regard to witness tampering is not one of admissibility but of comment.[1] As to Reed, there was no evidence to support the charge of tampering by defendant. The prosecutor could not properly deduce from the fact of a wink the inference of an affirmative undertaking by Reed to "help" his "old buddy." An inference not reasonably deducible from the evidence may not be stated. Luttrell v. United States, 320 F.2d 462 (5th Cir. 1963). This charge was supported only by the improper implication that there was existent, but unstated, evidence of which the jury did not have the benefit. McMillian v. United States, 363 F.2d 165 (5th Cir. 1966).

■ The prosecutor's assertion that Beck was afraid of defendant was a bald assertion of fact not in evidence and therefore improper, e. g., Dunn v. United States, 307 F.2d 883, 885 (5th Cir. 1962). His inference of tampering could not be drawn from what meager facts were in evidence, United States v. Persico, 305 F.2d 534 (2d Cir. 1962); United States v. Schwartz, 325 F.2d 355 (3d Cir. 1963); Luttrell v. United States, supra. The highly inflammatory nature of the remarks is obvious. They charged a separate, and a serious, criminal offense.[2] They went to the integrity of the trial itself. And they were pursued and re-pursued after objection and admonition from the court. Where there are remarks such as here made the court should, as a minimum, sustain an objection and immediately and clearly instruct the jury that the argument is not supported by evidence. United States v. Pepe, 247 F.2d 838 (2d Cir. 1957).

2. The statement of opinion on a disputed issue of fact, and the vouching for Degnan as a person of integrity.

One of the issues that went to the jury was whether the witness Beck was intimidated by FBI Agent Degnan into making a statement that appellant had stolen the car. The second prosecutor met this issue by saying, as his initial point of argument:

There are some amazing things about this case. The defendant Hall has testified here that Beck told him that he was intimidated by the F.B.I. or forced to make a statement saying that Hall stole the car

Now, gentlemen, I get a little tired of the police and the F.B.I. being the whipping boys of criminals and liars. I just don't believe that Harry Degnan who took Beck's statement and whom you have seen in this courtroom all this time would force anybody to make a statement. I know him to be a fine F.B.I. officer—absolutely the finest I know. A man of absolute integrity. And I get a little tired of the F.B.I. being whipping boys for hoodlums. And that is the only way I know how to describe the defendant Donald Hall, he is a hoodlum.

■ The statements by counsel of his personal belief or opinion that Agent Degnan did or did not force Beck

1. Evidence of threats to a witness may be admissible as tending to show consciousness of guilt. E. g., Phillips v. United States, 334 F.2d 589 (9th Cir. 1964). And, obviously, it would be admissible on credibility of the witness.

2. 18 U.S.C. § 1503 (1966).

to make a statement, and his opinion (though stated as a fact) of Degnan's integrity, were improper. The voluntariness of Beck's statements and the underlying issues of credibility were for the jury. Writing for this court in Dunn v. United States, *supra*, 307 F.2d at 886, Judge Gewin pointed out that it was improper for counsel to express his personal opinion in his jury argument. In McMillian v. United States, *supra*, where the opinion took the form of the prosecutor's office being convinced that "they've got a case," we followed *Dunn*.

*McMillian* also relied upon Greenberg v. United States, 280 F.2d 472 (1st Cir. 1960). In that case the United States Attorney had expressed his opinion of the trustworthiness of the government's evidence and the consequent guilt of the accused. Chief Judge Aldrich said this:

> Rule 15 of the Canons of Professional Ethics of the American Bar Association reads,
>
> "It is improper for a lawyer to assert in argument his personal belief in his client's innocence or in the justice of his cause."

Government counsel stated in oral argument before us that this was "inapposite" because he is an "advocate." We are not clear whether he disapproves of the principle, or whether he considers himself outside of it. In either event we disagree. To permit counsel to express his personal belief in the testimony (even if not phrased so as to suggest knowledge of additional evidence not known to the jury), would afford him a privilege not even accorded to witnesses under oath and subject to cross-examination. Worse, it creates the false issue of the reliability and credibility of counsel. This is peculiarly unfortunate if one of them has the advantage of official backing.* The resolution of questions of credibility of testimony is for impartial jurors and judges. The fact that government counsel is, as he says, an advocate is the very reason why he should not impinge upon this quasi-judicial function. We believe the canon to be elemental and fundamental.

280 F.2d at 474–475.[3]

---

\* Where would this leave a criminal defendant who is entitled to representation, but whose counsel does not believe in his innocence? Must his counsel nevertheless assert such a belief in order to counter the expressed opinion of government counsel, or does such a defendant have an unrefuted witness against him, in in the form of the prosecuting attorney? Or should a prosecutor be permitted to argue, for example, "Members of the jury, I tell you that in my opinion trained to examine evidence this defendant is guilty as hell. I know it. Even his own counsel knows it. Oh yes, his counsel asked you to find him not guilty. But I notice that not once did he suggest to you that he had even a shadow of belief in his client's innocence. Why didn't he? Because his conscience wouldn't permit him to. Even his own lawyer doesn't think he is innocent, but he wants you \* \* \*" etc., etc. That is not the argument made in this case, but we see no stopping point except the one stated in the canon.

3. In some instances statements of opinion of guilt have been held not reversible if the statement is supported by the evidence *and* if it does not lead the jury to believe the prosecutor is relying on evidence outside the record. At times the emphasis in the opinions has been on the first factor with the second almost disregarded. See Thompson v. United States, 272 F.2d 919 (5th Cir. 1959); Henderson v. United States, 218 F.2d 14, 50 A.L.R.2d 754 (6th Cir.) cert. denied, 349 U.S. 920, 75 S.Ct. 660, 99 L.Ed. 1253 (1935).

*Thompson* is not a blanket authorization for expressions of opinion about guilt (or about anything else.) The single statement, in an argument not appealing to passion and prejudice and not otherwise subject to any criticism, was "I'll be frank with you, I think the verdict is guilty on all three counts." Also an alternative ground for the affirmance was that even if the statement might be regarded as beyond the bounds of legitimate argument, defense counsel declined

The voucher for Degnan's personal integrity was blatantly improper. It invaded the province of the jury. It went beyond credibility to general integrity, implying that Degnan was not the sort of person who would force a witness to make a statement. It was not merely based inferentially on extrinsic evidence but explicitly upon the prosecutor's extrajudicial knowledge of Degnan and his opinion based on that knowledge. This court reversed for the personal voucher for the witness in *Gradsky v. United States*, 373 F.2d 706 (5th Cir. 1967). Here, as there, the jury was led to believe there was evidence unknown or unavailable to the jury that established credibility.

3. The statement "we try to prosecute only the guilty."

 The statement "we try to prosecute only the guilty" is not defensible.[4] Expressions of individual opinion of guilt are dubious at best. See part 2, *supra*. This statement takes guilt as a pre-determined fact. The remark is, at the least, an effort to lead the jury to believe that the whole governmental establishment had already determined appellant to be guilty on evidence not before them. *McMillian, supra*, 383 F.2d at 169.[5] Or, arguably it may be construed to mean that as a pretrial administrative matter the defendant has been found guilty as charged else he would not have been prosecuted, and that the administrative level determination is either binding upon the jury or else highly persuasive to it. Appellant's trial was held and the jury

impaneled to pass on his guilt or innocence, and he was clothed in the presumption of innocence. The prosecutor may neither dispense with the presumption of innocence nor denigrate the function of the trial nor sit as a thirteenth juror.[6]

4. The description of appellant as a "hoodlum."

 There was no objection to the use of the term. In *Steele v. United States*, 222 F.2d 628 (5th Cir. 1955) the defendant was styled a "Dr. Jekyl and Mr. Hyde." This court held that no objection was necessary and that the trial court on its own motion should have instructed the jury to disregard the improper remarks.

This type of shorthand characterization of an accused, not based on evidence, is especially likely to stick in the minds of the jury and influence its deliberations. Out of the usual welter of grey facts it starkly rises—succinct, pithy, colorful, and expressed in a sharp break with the decorum which the citizen expects from the representative of his government.

5.

*Berger v. United States*, 295 U.S. 78, 55 S.Ct. 629, 79 L.Ed. 1314 (1934) describes the double burden which the United States Attorney carries.

The United States Attorney is the representative not of an ordinary party to a controversy, but of a sovereignty whose obligation to govern impartially is as compelling as its

---

the offer of the court to attempt to rectify the situation and elected to "stand on [his] exception."

4. "Other 'institutional' causes for [prosecutorial] misconduct are possible. There is prosecutor's bias, the possibility that 'the prosecutor's mental attitude may unconsciously become swayed, and he may be inclined to say that not only the convicted but also the indicted and even suspected are guilty.'" Singer, Forensic Misconduct by Federal Prosecutors—and How It Grew, 20 Ala.L.Rev. 227, 228 (1968).

5. In *McMillian* the implication of a pretrial determination of guilt was not nearly so strong as here, being cast in the form of the necessity of the prosecutor's office being convinced by government agents that "they've got a case."

6. Professor Singer points out that restraint on prosecutorial conduct does not imply mistrust of the jury so much as it looks toward the absolute neutrality which is the shield of the defendant. Singer, *supra* note 4, at 236.

obligation to govern at all; and whose interest, therefore, in a criminal prosecution is not that it shall win a case, but that justice shall be done. As such, he is in a peculiar and very definite sense the servant of the law, the two fold aim of which is that guilt shall not escape or innocence suffer. He may prosecute with earnestness and vigor—indeed, he should do so. But, while he may strike hard blows, he is not at liberty to strike foul ones. It is as much his duty to refrain from improper methods calculated to produce a wrongful conviction as it is to use every legitimate means to bring about a just one.

295 U.S. at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321. We have carried that doctrine forward in Handford v. United States, 249 F.2d 295, 296 (5th Cir. 1957):

A United States district attorney carries a double burden. He owes an obligation to the government, just as any attorney owes an obligation to his client, to conduct his case zealously. But he must remember also that he is the representative of a government dedicated to fairness and equal justice to all and, in this respect, he owes a heavy obligation to the accused. Such representation imposes an overriding obligation of fairness so important that Anglo-American criminal law rests on the foundation: better the guilty escape than the innocent suffer. In this case zeal outran fairness. The argument of the United States attorney in the district court was improper, prejudicial, and constituted reversible error.

We reiterated our understanding of these principles in Washington v. United States, 327 F.2d 793 (5th Cir. 1964).

When zeal does outrun fairness and the prosecutor makes inappropriate statements there is a multiple effect which tends to tip the scales in favor of the government. Ordinarily government counsel is, as an individual, "properly and highly respected by the members of the jury for his integrity, fairness, and impartiality." Thompson v. United States, supra, 272 F.2d at 923 (concurring opinion). And, as Berger points out, 295 U.S. at 88, 55 S.Ct. at 633, 79 L.Ed. at 1321:

It is fair to say that the average jury, in a greater or less degree, has confidence that these obligations, which so plainly rest upon the prosecuting attorney, will be faithfully observed. Consequently, improper suggestions, insinuations, and, especially, assertions of personal knowledge are apt to carry much weight against the accused when they should properly carry none.

Added to this is the unseen presence in the courtroom of our great and powerful government with its counsel and its voice in the person of the United States Attorney. For all these reasons his power to persuade is great. And for these reasons he must speak with the care, the decorum and the sensitivity that befit his position and his duties. Neither the heat and strain of trial nor the right to strike hard blows authorizes him to do otherwise.

Reversed.

CHOATE, Senior District Judge (dissenting):

It is certainly true that the prosecutor's remarks to the jury should be restricted to the evidence and its reasonable implications. But it is also true that a presumptively valid jury verdict should not be disturbed on appeal unless it is shown that there was reversible error in the court below. I do not believe that such error was demonstrated in this particular case.

The prosecutor's characterization of appellant as a "hoodlum" was not objected to at trial. This short-hand statement was not unsupported by the evidence and, while perhaps improper, was not fundamental error requiring reversal. The matters discussed at length in part 2 of the majority opinion were not assigned as error on appeal and were not briefed or argued. It is not the function

of an appellate court to search for errors that were not presented to the trial court and that were not assigned as error on appeal. See Fogarty v. United States, 263 F.2d 201 (5 Cir. 1959). Finally, the trial court was reasonably understood to have sustained the objections to the remarks discussed in parts 1 and 3 of the majority opinion. At no time did trial counsel feel obligated to move for a mistrial and the trial court was never called upon to rule on such a motion.

We are not here dealing with a case where the evidence of guilt is slight and the government's burden of persuasion is subject to attack. Few trials are free from error. The guilt of the defendant was manifest and we should hesitate to disturb the conviction unless reversible error is demonstrated. While it is certainly the intent of the law to protect the fundamental rights of the accused, we must remember that it is also the overriding intent of the law that the guilty be promptly prosecuted without undue restraint. Our system of criminal justice is suffering severely from the now common delays in reaching a final result in criminal proceedings. This case, as it comes before this court, should be affirmed.