Milton ZAIONTZ, Jr., Appellant,

v.

The STATE of Texas, Appellee.

No. 04–84–00100–CR.

Court of Appeals of Texas,
San Antonio.

Nov. 6, 1985.

Franklin Scott Spears, Jr., Austin, for appellant.

Sam Millsap, Jr., Charles Strauss, Edward Sargologos, Daniel Thornberry, Crim. Dist. Attys., San Antonio, for appellee.

Before BUTTS, CANTU and REEVES, JJ.

OPINION

CANTU, Justice.

Appellant's conviction is for theft of property of an aggregate value in excess of $10,000.00. *See* TEX. PENAL CODE ANN. §§ 31.09, 31.03 (Vernon 1974).[1]

Following a jury trial on the guilt/innocence phase, the trial court assessed punishment at ten years, probated.

Appellant's first two grounds of error attack the sufficiency of the evidence to support the conviction for theft. Specifically appellant claims that there is insufficient evidence to establish that he appropriated property without the effective consent of its owner or that he had the intent to deprive the owner of his property. He further contends that the evidence is insufficient to show that he engaged in a scheme or continuing course of conduct to deprive the owner of his property.

The indictment alleged in pertinent part: [O]n or about the 3rd day of FEBRUARY, A.D., 1982, and anterior to the presentment of this indictment, MILTON

1. Amended by Acts 1983, 68th Leg., p. 2918, ch. 497, § 3, eff. Sept. 1, 1983.

ZAIONTZ, with intent to deprive the owner, PATRICK BOROCHOVITCH, of property, namely: FIVE (5) LOTS OF DIAMONDS WEIGHING 8.93 CARATS, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property which had AN AGGREGATE VALUE OF TWO HUNDRED DOLLARS ($200.00) OR MORE BUT LESS THAN TEN THOUSAND DOLLARS ($10,000.00), without the effective consent of the owner;

and that on or about the 4th day of FEBRUARY, A.D., 1982, in the County of Bexar and the State of Texas, and anterior to the presentment of this indictment, MILTON ZAIONTZ, with intent to deprive the owner, PATRICK BOROCHOVITCH, of property, namely: THREE (3) LOTS OF DIAMONDS WEIGHING 7.62 CARATS, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property, which had AN AGGREGATE VALUE OF TWO HUNDRED DOLLARS ($200.00) OR MORE BUT LESS THAN TEN THOUSAND DOLLARS ($10,000.00), without the effective consent of the owner;

and that on or about the 9th day of FEBRUARY, A.D., 1982, in the County of Bexar and the State of Texas, and anterior to the presentment of this indictment, MILTON ZAIONTZ, with intent to deprive the owner, PATRICK BOROCHOVITCH, of property, namely: THREE (3) LOTS OF DIAMONDS WEIGHING 6.74 CARATS, did unlawfully appropriate said property by acquiring and otherwise exercising control over said property, said property being other than real property, which had AN AGGREGATE VALUE OF TWO HUNDRED DOLLARS ($200.00) OR MORE BUT LESS THAN TEN THOUSAND DOLLARS ($10,000.00); without the effective consent of the owner;

and all said amounts were obtained as alleged, in one scheme and continuing course of conduct, and the aggregate amount of the amounts stolen had a value of TEN THOUSAND DOLLARS ($10,000.00) OR MORE, ...

In order to convict for theft under section 31.03 the State was required to prove that appellant appropriated property belonging to another without the owner's consent and with the intent to deprive the owner of the property. *Hughes v. State*, 561 S.W.2d 8 (Tex.Crim.App.1978). Additionally, in order to aggregate the separate amounts of various acts of theft to increase the degree of the offense, the State was required to prove that appellant acted pursuant to a single scheme or continuing course of conduct while committing the various acts of theft.

■ The existence of a scheme or continuing course of conduct may be shown by such factors as common ownership of the stolen property, similarity of the property, and proximity of time and place of the various incidents of theft. *Oliver v. State*, 613 S.W.2d 270 (Tex.Crim.App.1981).

■ The record reflects that sometime in January of 1982, Tri-Continental, Inc., a New York corporation dealing in the importation and retail and wholesale sale of diamonds, advertised in a trade magazine for a sales agent in the Texas area. Appellant responded to the advertisement by writing to Tri-Continental and expressing an interest. Tri-Continental then phoned appellant and arranged for a flight for appellant to New York for an interview. The interview was conducted by Maurice Shire, president of Tri-Continental, and by Patrick Borochovitch, an officer of the corporation. Appellant provided professional references and claimed to have been in the jewelry business for approximately five years. Following an inquiry of appellant's listed references, Tri-Continental offered appellant employment as its agent.

After appellant was hired, Tri-Continental shipped appellant diamonds to be sold on consignment. Under the consignment arrangement, a salesman did not receive title to the diamonds and was obligated to return those which he did not sell.

The diamonds were divided into lots accompanied by a memorandum. A lot consisted of any number of diamonds of similar quantity, weight and color and was identified by a reference number. Each lot was traceable by the common characteristics of the diamonds. The first shipment was sent and received by appellant sometime in the latter part of January or early part of February of 1982. Over the course of the next six months between $300,000.00 and $500,000.00 worth of diamonds was transferred back and forth between Tri-Continental and appellant. Shipment by Tri-Continental was either by certified mail, return receipt requested, by registered air mail, or by courier service.

According to Borochovitch, he and appellant were in contact almost on a daily basis. If appellant was in possession of diamonds Borochovitch needed for other customers, appellant normally returned them to Borochovitch immediately. Accordingly, appellant returned six lots of diamonds to Tri-Continental on March 3, 1982, as reflected by memo B–1800 and memo B–1801.[2]

Appellant operated at the same time, a private business known as Gold Tex, Inc. Many of the diamonds shipped to appellant were in fact bought and paid for through Gold Tex, Inc. Checks admitted into evidence reflect that Gold Tex, Inc. in fact purchased at least $14,625.10 in diamonds from Tri-Continental in addition to subsequent purchases totaling $10,500.00.

It was not unusual for Borochovitch and another Tri-Continental officer, Seymour Freilich, to come to San Antonio to pick up diamonds from appellant in order to take them to more opportune sales markets. The record reflects such pick-ups occurred on July 13, 1982, September 15, 1982, October 4, 1982 and October 19, 1982.

On one such trip to San Antonio, Borochovitch requested that appellant take him to various jewelers to inquire as to outstanding amounts owed Tri-Continental as a result of sales made by appellant. A visit to several individuals resulted in the collection of funds owed and/or promissory notes for moneys owed.

Sometime in September of 1982, Tri-Continental requested that appellant return all the diamonds that were given to appellant on consignment and which were not carried in the records as sold.[3] On November 1, 1982, Tri-Continental demanded, by letter, the return of the diamonds.

A meeting was arranged by appellant's attorney wherein the parties all met in the office of Ed Kuzniar, chief of the San Antonio Police Department. At this meeting on November 19, 1982, appellant returned what he represented to be $14,700.00 in diamonds from the lots alleged in the indictment, and acknowledged that $10,000.00 in other diamonds were still out on consignment available for pick up. Following an analysis of the returned diamonds under more acceptable conditions it was determined that over $10,000.00 in diamonds were either missing from the lots in question or were replaced by cubic zirconium.

Borochovitch testified that the diamonds contained in the lots alleged in the indictment had been sent to the appellant on the dates therein alleged, but had never been returned or sold. Appellant acknowledged receipt of the diamonds in question. The record further reflects that appellant, together with two other individuals identified as Mark Jacobi and Dr. Ashok Jaini, entered into a partnership called Zargem for the sale of jewelry.

Jacobi testified that after he began encountering financial difficulties in September of 1982, appellant suggested to him that he (Jacobi) list a promissory note executed to Tri-Continental as a debt in his bankruptcy proceeding in federal court and

---

**2.** A memorandum is a list assigned by number to each shipment of diamonds detailing the lots' contents and reference number. The memorandum also has a blank space for recording whether a lot has been sold or returned by the salesman.

**3.** The request did not involve any diamonds purchased upon a promissory note or billing errors involving other lots not included in the indictment.

to then transfer the diamonds which secured the note to appellant. According to Jacobi, appellant was to then sell the diamonds and divide the proceeds with him. Jacobi refused the offer.

Appellant sought to account for the missing diamonds alleged in the indictment by testifying to two incidents. The first incident concerned an alleged theft in August 1982.

Appellant testified that he was at the offices of Zargem discussing business with individuals named Dwight Mills and Luis Mendez. Appellant claimed to have met Mendez through his babysitter.

During the conversation at the Zargem offices, Mendez allegedly excused himself to use the telephone in another room. Later that day, appellant testified he discovered that diamonds which had been left in a letter tray near the phone were missing. Appellant subsequently reported to police that some $3,000.00 in diamonds had been stolen. However, at the time of the meeting at police headquarters on November 19, 1982, appellant for the first time contended that $10,000.00 in diamonds had in fact been stolen.

Appellant sought to explain that he did not learn of the full extent of the theft until sometime later. According to Captain Kuzniar of the San Antonio Police Department, appellant admittedly forgot to report the theft of the additional $7,000.00 worth of diamonds. Appellant failed to inform Tri-Continental that their diamonds had been stolen, explaining that he feared loss of insurance coverage as well as pressure arising from Mendez's relationship to his babysitter.

Appellant also sought to explain the absence of over $6,000.00 worth of diamonds made the basis of the indictment by claiming that a theft occurring on February 24, 1983, had been responsible for the loss.

According to appellant these diamonds were out on consignment at the time of the November 19, 1982 meeting, had subsequently been returned to him, were placed in his office safe and were stolen before he could return them to Tri-Continental. Appellant claimed to have reported the loss to Lloyds of London but produced no evidence of a claim being made. Appellant insisted, however, that Tri-Continental would be paid out of the insurance proceeds.

This theft allegedly occurred sometime after Tri-Continental had made at least two letter demands for the return of the diamonds.

The court's charge instructed the jury that it could not convict appellant unless it found that appellant had the intent to appropriate the owner's property at the very time of the first appropriation and that this intent continued through the time of the third appropriation in a single scheme and continuing course of conduct.

TEX. PENAL CODE ANN. § 31.01 (Vernon 1974) provides that consent induced by deception is made ineffective in a theft case.

Section 31.01(2) defines deception as:

(A) creating or confirming by words or conduct a false impression of law or fact that is likely to affect the judgment of another in the transaction, and that the actor does not believe to be true;

(B) failing to correct a false impression of law or fact that is likely to affect the judgment of another in the transaction, that the actor previously created or confirmed by words or conduct, and that the actor does not now believe to be true;

    *     *     *     *     *     *

The trial court's definition of deception tracks the definition in the Penal Code and through application in the charge permitted the jury to convict if consent was ineffective because of deception.

It has been said that deception occurs when the owner would not have consented to transferring property had he been aware of the actor's real intent. *See Ashby v. State,* 604 S.W.2d 897 (Tex.Crim.App.1980) (On Rehearing).

An actor's intent can be inferred from his conduct. *Dues v. State,* 634 S.W.2d 304 (Tex.Crim.App.1982).

In the instant case appellant's defense consisted of a denial of the accusation lodged against him. The State's evidence made out a case against appellant. His testimony sought to explain away the State's case against him. The case thus became one for the jury to decide on the basis of credibility of witnesses. *Penagraph v. State,* 623 S.W.2d 341 (Tex.Crim. App.1981).

In viewing the foregoing evidence in the light most favorable to the verdict, we cannot say that the jury as a rational trier of fact could not have reasonably found appellant guilty of the offense charged beyond a reasonable doubt. *Jackson v. Virginia,* 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). We overrule appellant's first and second grounds of error.

Appellant's third ground of error complains of a remark made by the prosecutor during opening remarks immediately preceding jury selection.

The following remarks form the basis of the complaint:

> What we are doing is, hopefully to the end result, is to get a fair and impartial jury for not only the Defendant in this case, but the people of the State of Texas, who I represent, and Mr. Sargolos represents, also have a fair and impartial jury and have a fair and impartial trial. *But considering the oath that I take as a prosecutor to do justice, and the fact that I wouldn't be here if I didn't believe the Defendant to be guilty, I probably would like to have an edge.* [Emphasis ours.]

Appellant equates the remarks to improper jury argument and cites authorities addressing misconduct in that area. We recognize that there is a difference inasmuch as the prosecutor cannot at that juncture (voir dire) argue evidence not yet in evidence. However, it is apparent that remarks made by a prosecutor during jury selection can and often are calculated to deny an accused a fair and impartial trial. *Cf.* cases where the prosecution injects unsworn testimony of personal knowledge and opinion of appellant's guilt, i.e., *Robil-*

*lard v. State,* 641 S.W.2d 910 (Tex.Crim. App.1982); *Clayton v. State,* 502 S.W.2d 755 (Tex.Crim.App.1973); *Fowler v. State,* 500 S.W.2d 643 (Tex.Crim.App.1973); *Baldwin v. State,* 499 S.W.2d 7 (Tex.Crim.App. 1973); *Alford v. State,* 158 Tex.Crim.R. 632, 258 S.W.2d 817 (1953); *Spinks v. State,* 157 Tex.Crim.R. 612, 252 S.W.2d 159 (1952).

█ In the instant case defense counsel made no objection to the remark now complained of on appeal. Generally, the failure to object to improper jury argument waives any error absent a showing that the argument in question was so prejudicial that it could not have been cured even with an instruction to disregard. *Romo v. State,* 631 S.W.2d 504 (Tex.Crim.App.1982). The same rule should apply in this case.

█ In examining the entire record including preliminary instructions by the trial court to the jury veniremen and the charge to the jury as well as the context in which the remark was made, we cannot say that such remark, although admittedly improper, constitutes such prejudicial error as could not have been cured by an instruction. *Moynahan v. State,* 140 Tex.Crim.R. 540, 146 S.W.2d 376 (1941). Appellant's third ground of error is overruled.

The judgment is affirmed.