Charles Edward JACKSON, Appellant,

v.

The STATE of Texas, Appellee.

No. 05–85–00352–CR.

Court of Appeals of Texas, Dallas.

Feb. 17, 1987.

Rehearing Denied March 23, 1987.

---

Robert N. Udashen, Gary A. Udashen, Dallas, for appellant.

Michael A. Klein, Dallas, for appellee.

Before GUITTARD, C.J., and HOWELL and THOMAS,[1] JJ.

## ON MOTION FOR REHEARING

GUITTARD, Chief Justice.

Our previous opinion on motion for rehearing is withdrawn and the following is now the opinion of this Court. Charles Edward Jackson was convicted by a jury of murder and punishment was assessed at ninety-nine years imprisonment and a $10,000 fine. We overrule each of appellant's five points of error raised on appeal, and accordingly affirm the conviction.

### PROSECUTOR'S COMMENT ON CONFESSION

In his first point of error, appellant claims that in voir dire examination of the jury panel, the prosecutor improperly bolstered the credibility of portions of appellant's confession. This point of error is based upon the prosecutor's statement to the jury to the effect that the prosecution would introduce only the evidence that *they believed to be true*, implying that because the prosecutor introduced appellant's confession, he believed it to be true. This is an improper interjection of the prosecutor's opinion.

On voir dire, before any evidence was introduced before the jury, the prosecutor commented:

Now, sometimes in criminal cases—and I don't know what the facts will be in this case with reference to it, but sometimes confessions are given but not all the time will you receive all of it from one side in a case. Certain parts may be excluded by law. Basically, when a side and I'm going to use us, for example. The State of Texas, when we give evidence to a jury, we have to have a good faith belief that that evidence is true. *We've got to*

1. Justice Linda Thomas succeeded Justice Ted M. Akin at the expiration of his term on December 31, 1986.

*present you all in good faith what we believe to be the truth.* Who writes the confession? The defendant. He can put anything in it that he wants. *If the situation presents itself, if there are certain portions of it that we don't believe—*

(emphasis added). Appellant's attorney cut the prosecutor off in mid-sentence and objected that the prosecutor was vouching for the credibility of appellant's confession and thereby bolstering. The trial court overruled the objection but admonished the jury as follows:

> THE COURT: Ladies and gentlemen, reality is any side that brings a person to testify is vouching for the credibility of that witness, that does not necessarily mean that the State is suggesting or anyone that brings a person to the stand, that's not saying this person is 100 percent telling the truth. What that lawyer's presenting is they have reason that person's telling the truth, thus in that instance, any lawyer that brings any witness to the stand is vouching that that witness is going to testify as to the truth.

The prosecutor continued ...

> In that regard, we have the right to exclude certain portions of a confession. The reason I bring this up is if that occurs in this case, I want you all to understand the legal background under which that can and may be done. I don't want anybody to say the State left that out; they're trying to fool us; trying to pull a trick on us. That's not it at all. The law says in order for us to put on testimony, we've got to have a good faith belief that its true.... That doesn't mean if we put it on that it is true. We're going to ask you to decide the truth....
> As such, the law allows us; that is, the State in this instance to exclude certain portions of a confession and let me go a bit beyond that. Really, the law says—and I guess I left this out—that if we, the State, present certain portions of— well any portions that we present, we have to be bound by it because we put it forward, okay? And any portions that

we have to be bound by that we feel is evidence to the contrary, we have to disprove that beyond a reasonable doubt and it just puts more of a burden on us to continue proving and disproving and going back and forth with things, okay?

Much of the prosecutor's statement to the jury amounted to a mere explanation of the law and was therefore permissible. The prosecutor attempted to explain the conditions under which the State would exclude portions of appellant's confession. However, the statement of the law could have been effectively communicated to the jury panel without introduction of the prosecutor's opinion regarding the truth of the confession. The implication of the prosecutor's statement is that "if we introduce it, we believe that it's true."

■ As a general rule, it is improper for a prosecutor to interject his personal opinion into a statement made to the jury. *Johnson v. State*, 698 S.W.2d 154, 167 (Tex. Crim.App.1985). The rationale behind this prohibition is that such a statement may convey to the jury the idea that the prosecutor has a basis for such an opinion in addition to the evidence presented at trial. *See Wyatt v. State*, 566 S.W.2d 597, 604 (Tex.Crim.App.1978). "The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says." *Hall v. United States*, 419 F.2d 582, 583–84 (5th Cir.1969).

Appellant cites *Robillard v. State*, 641 S.W.2d 910 (Tex.Crim.App.1982) as controlling authority. As in the present case, the prosecutor in *Robillard* also attempted to explain why he introduced only part of appellant's confession. He stated during closing argument, "I told you that a prosecutor that works for Mr. Henry Wade is not going to put evidence before the jury that *he himself does not believe is true*" (emphasis added). The court of criminal appeals held that this statement impermissibly interjected the prosecutor's opinion. *Robillard*, 641 S.W.2d at 912.

[2–4] We have a similar problem in the case at hand. Accordingly, we follow *Robillard* in holding that the underlined por-

tion of the prosecutor's statement in the present case was an interjection of his opinion and thus impermissible. However, in determining whether this error was harmless, we conclude that *Robillard* is distinguishable in several respects. First, the prosecutor's improper statement in *Robillard* occurred during final argument and was thus the *last* thing the jury heard before they retired to deliberate. An improper statement during closing argument has a greater impact on the jury than the same statement made during voir dire when much time still remains before deliberations.

Second, the prosecutor's language in *Robillard* was much stronger than the statement in the case at hand. In *Robillard,* the prosecutor stated, "Now again, I told you that a prosecutor that works for Mr. Henry Wade is not going to put evidence before the jury that he himself does not believe is true." The use of the district attorney's name in an attempt to lend credibility to the prosecutor's argument before the jury made his improper bolstering even more emphatic. Moreover, the prosecutor's argument in *Robillard* indicates that he was re-emphasizing a similar remark made earlier.

In the present case, after the prosecutor's objectionable statement was made, the trial court explained, quite correctly, that "vouching for credibility" means only that counsel has no reason to believe the evidence to be false and instructed the jury that it was *their job* to determine the truth of the witnesses' statements. This shifted the focus from the *prosecutor's* belief or disbelief of the truth of the confession and properly placed responsibility for this determination on the jury. To the same effect was the *last* instruction in the court's charge. It stated:

> You are the exclusive judges of the facts proved, the credibility of the witnesses and the weight to be given the testimony. . . .

In *Zaiontz v. State,* 700 S.W.2d 303, 307 (Tex.App.—San Antonio 1985, pet. ref'd), the court held that the prosecutor's improper remark during voir dire did not constitute reversible error in light of preliminary instructions by the trial court, the charge to the jury, and context in which it was made.

For the above reasons, we conclude that although the underlined portion of the prosecutor's statement was improper, the admonitions and instructions given to the jury, and the intervening trial with no further reference to the prosecutor's belief, rendered any error harmless beyond a reasonable doubt. Accordingly, appellant's first point of error is overruled.

Appellant's second and third points of error both concern the legality of his arrest and the subsequent use of the resulting confession. Disposition of these two points of error turns entirely upon a determination of the legality of the appellant's arrest.

### LEGALITY OF ARREST

In his second point of error, appellant alleges that the trial court erred in admitting his written confessions into evidence because they were the fruits of an illegal arrest. In light of the recent court of criminal appeals opinion in *West v. State,* 720 S.W.2d 511 (Tex.Crim.App.1986), we hold that appellant's arrest was legal.

The following facts were developed at the hearing of appellant's motion to suppress two written confessions. The police officers were summoned to the victim's house and observed her body wrapped in a bloodied sheet tied with an extension cord. The officers spoke with the victim's daughter, who told them that she had spent the night with appellant at a motel room. The officers went to the motel to question appellant. He answered the door and invited the officers in. One officer noticed a pair of rubber gloves with what appeared to be blood between the fingers. He also saw a chain of which appellant admitted ownership. The officers asked appellant to come downtown for questioning and he agreed. The police allowed him to dress, and observed that the jeans he wore appeared to be stained with blood.

Upon arrival at the police station, appellant was placed in an interview room and

the rubber gloves, chain and jeans were taken for analysis. After examination of the evidence, the officers notified appellant formally that he was under arrest. Appellant was read his Miranda rights, and he subsequently signed two written statements. Although the police officer testified that he did not formally arrest appellant until after they arrived at the police station and tests were performed on the evidence, we shall assume that the arrest occurred at the motel when the police officers requested that appellant accompany them downtown.

The facts in *West* are strikingly similar to the case at hand. In *West*, several witnesses observed West, whose clothing appeared to be wet with blood, leave the victim's motel room and go to the second floor of the motel. Another person, not present at the time of the offense, stated his belief to investigating officers that the man described by the witnesses was staying in a certain room upstairs. When the officers knocked at the door to that room, West's companion opened the door and West was visible about eight feet inside, wearing only shorts. Upon request by the officers, West and his companion stepped into the hall. West fitted the description given by the witnesses and was then arrested without a warrant. Shortly thereafter, the witnesses identified West as the man they had seen leaving the victim's apartment.

West contended that his arrest without a warrant was unlawful because there was no proof that he was about to escape, as required by article 14.04 of the Code of Criminal Procedure (Vernon 1977), which provides:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is *about to escape,* so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

[Emphasis added.]

According to *West*, the pivotal questions to be considered in determining whether an arrest is authorized by article 14.04 are twofold: first, whether the information available to the arresting officers would justify the belief that the appellant would try to escape if not placed in custody, thus allowing no time to procure a warrant, and second, whether the actions of the officers themselves unnecessarily created the likelihood of escape by appellant. *West,* 720 S.W.2d at 517. An officer may act only upon information supporting a reasonable belief that the offender is about to escape, but he need not have proof that the offender was *actually* escaping. *Fry v. State,* 639 S.W.2d 463 (Tex.Crim. App.1982). The mere fact that appellant is found in a motel does not support the belief that the suspect is about to escape. *See Green v. State,* 594 S.W.2d 72 (Tex.Crim. App.1980). Another important factor to be considered is the availability to the officers of a reasonable alternative consistent with the interests protected by Article 14.

The officers in *West* had good cause to suspect that the offender was in the upstairs room to which they proceeded. However, this "good cause" did not rise to the level of probable cause. Thus, before knocking, the officers could not have procured an arrest warrant. The *West* court concluded that their attempt to confirm their suspicion rather than letting the "trail grow stale while awaiting a warrant for the unnamed person" was reasonable and necessary. The court in *West* held:

> Where ... officers who reasonably believe that further investigation of an offense may be necessary in order to justify the issuance of a warrant, and where those officers undertake that investigation lawfully and without impinging upon reasonable expectations of privacy, and where that investigation leads to the receipt of information which in combination with their information constitutes probable cause to arrest the suspect, but that information is obtained in the presence of the suspect under circumstances which would lead the officers reasonably to believe that the suspect would take flight if given the opportunity to do so, the officers are authorized by art. 14 to arrest

the suspect without first procuring a warrant.

Here, as in *West*, the police officers received information which gave them reason to believe that appellant may have been involved in a murder. They also had good cause to believe that appellant would be found in a particular motel room. Just as in the *West* case, however, this good cause had not yet risen to the level of probable cause necessary to support the issuance of an arrest warrant. It was both reasonable and necessary for the officers to attempt to confirm their suspicion by investigating further and going to appellant's motel room. When appellant became aware of the presence of the officers at the door, he was alerted to their interest in him. When the officers found the chain and the blood-stained gloves, which appellant admitted owning, they had probable cause to arrest him, and, according to *West*, it was reasonable for them to believe that appellant, now aware of the officers' curiosity about his involvement, might attempt an escape.

There was no alternative reasonable course of conduct available to the police officers. They could not have obtained an arrest warrant initially (before knocking on his door) because the information they had at that point did not amount to probable cause. Yet, they would have been derelict in their duty had they done nothing for lack of the "appropriate" information. The only reasonable course of action was to investigate further, and, upon this investigation, evidence was recovered sufficient to support an arrest warrant. It would be unreasonable to expect the police officers to approach appellant, collect the evidence, *leave* in order to get a warrant and *return* to make the arrest.

In view of these circumstances we hold, in the light of *West*, that the arrest without a warrant was lawful under article 14.04. It follows that the confessions were not the fruit of an illegal arrest and were properly admitted.

In appellant's third point of error he argues that the trial court should have submitted his requested instruction concerning the jury's consideration of illegally obtained evidence. As authority for his proposition, appellant cites article 38.23 of the Texas Code of Criminal Procedure (Vernon 1979), which provides that illegally obtained evidence is inadmissible. The Code goes on to state that when an issue is raised regarding the legality of certain evidence, the jury must be instructed that if it believes or has a reasonable doubt that the evidence was illegally obtained, it must disregard the evidence. TEX.CODE CRIM. PROC.ANN. art. 38.23 (Vernon 1979).

Thus, the pivotal question becomes whether the evidence presented to the jury raises an issue regarding the legality of the arrest and the admissibility of the resulting confession. Under the Code, if an issue is presented, an instruction is required. Conversely, if no issue is presented, an instruction is not required.

Appellant contends that an issue *was* raised in front of the jury regarding the legality of his arrest, and he was therefore entitled to an instruction. He bases his argument only on the fact that the jury heard testimony that his arrest was warrantless and heard an objection to the admission of his confession thereby making the jury aware of a challenge to the evidence. This evidence alone is insufficient to raise an issue before the jury regarding the legality of appellant's arrest. The circumstances surrounding the legality of the arrest were raised in a pretrial motion to suppress appellant's confession but were not before the jury at trial. If an issue is not raised before the jury, the defendant is not entitled to an instruction. *Jordan v. State*, 562 S.W.2d 472 (Tex.Crim. App.1978).

Appellant also argues that his testimony, that he felt he was under arrest, was sufficient to raise an issue. We disagree. Appellant's feelings in this respect are relevant only in the determination of whether an arrest occurred, not whether the arrest was legal. Moreover, we have held that the arrest was legal, even assuming that it occurred at the motel. Thus, no issue was raised. Because appellant failed

to point out any evidence before the jury raising an issue concerning the legality of his arrest, he was not entitled to an instruction under article 38.23. The trial court was correct in denying the requested instruction. Accordingly, appellant's third point of error is overruled.

## PRESENTATION TO MAGISTRATE WITHOUT DELAY

In his fourth point of error, appellant argues that his confessions should not have been admitted into evidence because the police violated article 14.06 of the Texas Code of Criminal Procedure (Vernon 1977) by refusing to take him before a magistrate without unnecessary delay following his arrest. Appellant was not presented to a magistrate until approximately twelve hours after his arrest and this, he contends, was an unreasonable delay requiring exclusion of the confessions obtained in the interim. We disagree. Even a lengthy delay will not render a confession inadmissible unless it is also shown that the failure to take the accused before a magistrate without delay *caused* the confession. *Williams v. State*, 692 S.W.2d 671 (Tex.Crim.App.1984); *Wagner v. State*, 687 S.W.2d 303 (Tex.Crim.App. 1984); *Maloy v. State*, 582 S.W.2d 125 (Tex.Crim.App.1979).

There is no evidence in this case that appellant's confessions were precipitated by a failure to present him to a magistrate without delay. Thus, because appellant's confession was not causally related to any delay in presentation before a magistrate, the confession was not invalidated on that ground. Accordingly, appellant's fourth point of error is overruled.

## SUFFICIENCY OF THE EVIDENCE

In his fifth point of error, appellant argues that there was insufficient evidence to support his conviction because of a fatal variance between the indictment and the proof at trial. We disagree. The indictment alleges that appellant caused the death of the deceased by strangling her with an extension cord. The medical examiner's testimony at trial indicated that the deceased's death was caused by strangulation. He testified further that an electrical cord was found around her neck and that marks found on her neck were consistent with being strangled by an extension cord.

Although there was other testimony that appellant could have used his hands or a chain to strangle the deceased, this does not cause a fatal variance between the indictment and the proof. The State is not required to prove beyond a reasonable doubt that the act alleged in the indictment *alone* caused the death. If the act of the accused alleged in the indictment contributed to the death of the deceased, the accused is responsible even though other causes contributed. *Jones v. State*, 644 S.W.2d 530, 531–32 (Tex.App.—Corpus Christi 1982, no pet.). Thus, In *More v. State*, 692 S.W.2d 912 (Tex.App.—Houston [14th Dist.] 1985, pet. ref'd) the indictment alleged that death was caused by strangulation. Evidence indicated that death was caused by strangulation *and* a skull fracture, but it was impossible to determine which occurred first. The court wrote that the State need not prove that strangulation alone caused decedent's death; the defendant was responsible because the act alleged in the indictment contributed to the death of the deceased even though it may not have been the only cause of death. The court held that the evidence was sufficient to support the conviction. Therefore, we hold in the case at bar that there was no fatal variance between the indictment and the proof at trial and the evidence is thus sufficient to support the conviction. Accordingly, appellant's fifth point of error is overruled.

We overrule all five of appellant's points of error and affirm the conviction.

HOWELL, J., files a dissenting opinion.

HOWELL, Justice, dissenting.

I respectfully dissent. The majority concedes that the trial court erred in allowing the prosecutor to advise the jury that he would only present evidence which he believed to be true, but the majority has

dismissed the error as harmless. The majority has not properly applied the applicable rule:

> If the appellate record in a criminal case reveals error in the proceedings below, the appellate court *shall reverse* the judgment under review, *unless* the appellate court determines *beyond a reasonable doubt* that the error made *no contribution* to the conviction or to the punishment.

Tex.R.App.Proc., R. 81(b)(2) (emphasis added). The majority has not fully quoted the record. In addition to the testimony quoted by the majority, the proceedings continued as follows:

> [Prosecution].... Every lawyer—you know, I'm a prosecutor. I'm a lawyer. I'm bound by the same ethical principles that they are and likewise, we just represent different sides. That's all.

> As our oath as lawyers, part of our oath is to see to it that the truth is shown and especially to a jury and as such, we're required ethically to present only evidence that we have a good faith belief in, same as with them.

> [Defense Counsel]: Excuse me. I'm going to make the same objection, Your Honor, that it's bolstering; violates due process for the prosecutor to state that he is going to vouch for the confession presented; violates the United States and Texas Constitution[s], and is bolstering.

> [The Court]: With regard to the objection of bolstering, the Court is going to overrule the objection.

> Once again, members of the jury, any lawyer that presents a witness to you is in effect testifying or in a sense is stating to you that they have reason to believe that this person will present to you the truth. In other words, the idea is that lawyers are officers of the Court and they cannot consciously or knowingly or intentionally allow a witness to testify when they know that witness is not going to tell the truth, and that's all that amounts to when you say you're vouching for the credibility.

> Again, there's a difference in credibility in a decision telling you what they say

is the truth. It's your job to determine if what they're saying is true or not true. It's the lawyers [sic] job to present to you, at least prima facie, say to you: I believe this witness will testify and tell the truth, and that doesn't make any difference whose side it's on, be it the Defense lawyer or State's lawyer because all lawyers are bound not to allow a person to testify when they know that person will not testify as to the truth.

In sum, the prosecutor was allowed to pursue at length the proposition that he would only present the portions of the confession which he believed to be true. Twice, the court rejected defensive objections. In each instance, the court made lengthy comments which could only have served to reinforce the prosecutor's contentions. This is not the type of error that may be brushed aside under the criminal justice standard of "harmless beyond a reasonable doubt."

In the case before us, the prosecutor, while attempting to explain why a portion of appellant's confession would not be offered, unequivocally gave his opinion that the offered portions were true. Unless clearly invited, it is improper for the prosecutor to inject his opinion of the evidence or the guilt of the accused. *Villalobos v. State*, 568 S.W.2d 134 (Tex.Criminal App. 1978); *Clayton v. State*, 502 S.W.2d 755, 756 (Tex.Crim.App.1973). This rule is grounded on the proposition that "[i]t is particularly improper, even pernicious, for the prosecutor to seek to invoke his personal status as the government's attorney or the sanction of the government itself as a basis for conviction of a criminal defendant." *United States v. Garza*, 608 F.2d 659, 663 (5th Cir.1979). "The power and force of the government tend to impart an implicit stamp of believability to what the prosecutor says." *Hall v. United States*, 419 F.2d 582, 583–84 (5th Cir.1969).

The majority concedes that *Robillard v. State*, 641 S.W.2d 910 (Tex.Crim.App.1982), has branded the practice in question as error, but would declare the error to be harmless beyond a reasonable doubt.

The majority presents that the error in this case is harmless beyond a reasonable doubt because the court below charged the jury that it was the exclusive judge of the weight and credibility of the evidence. The instruction is classic; it appears in virtually every criminal charge ever written. We must assume that it was given in *Robillard*. It follows that the attempted distinction has no substance. Furthermore, if standard instructions such as the credibility instruction can transform errors of this magnitude into error that is harmless beyond a reasonable doubt, the entire concept of a fair criminal trial has been altered.

The majority has further presented that the language in *Robillard* was "much stronger," an extremely subjective evaluation. But, in writing its *Robillard* decision, the Court of Criminal Appeals did not undertake any such narrow approach. It broadly declared it to be not only error but reversible error for a prosecutor to vouch for the credibility of the evidence. *Robillard* has been recognized but not followed.

If for no other reason, the subjective evaluation of "much stronger" should be rejected because the prosecutor's comments in the case at hand continued at length. He made not just one single statement vouching for the State's evidence; as many as a half dozen statements of voucher are discernible. The harmful nature of the remarks was compounded by the trial court. The court did not satisfy itself with a simple overruling of the objections lodged by counsel; it twice entered into an extended dialogue that reinforced the prosecutor's erroneous remarks. The "much stronger" evaluation will not meet scrutiny.

Finally, the majority would declare the erroneous statements not only harmless, but to be so beyond a reasonable doubt, on the ground that the remarks came during voir dire, whereas in *Robillard*, the statement came during final argument. Where is the authority for the proposition that a harmful remark made during final argument would be, beyond a reasonable doubt, harmless if it had been made during voir dire? This dissent knows of none and considers that any such authority would be dangerous precedent to establish. Our appellate courts should never communicate to the prosecution side of the bar the notion that objectionable remarks will be held harmless if but made at an early stage of the trial.

Has the majority not overlooked the long-and well-accepted truism that first impressions are lasting impressions? Is the majority so far removed from trial practice and the realities of the courtroom not to know that every good lawyer seeks not only to gain information at voir dire, but also to predispose the jury toward his side of the case? A full reading of the record discloses that this was exactly what this prosecutor was trying to do. He was not attempting to gain information about the jurors and their backgrounds in order to form a basis for challenge, the ostensible primary purpose of voir dire. He was far beyond that; he was attempting to predispose the jurors toward the evidence that the State was planning to offer.

Certainly, it is not inherently wrong for a lawyer to attempt to "sell his case" during the voir dire. However, in the case at hand, the attorney overstepped the bounds of propriety; he "oversold" his case, and for such reason, the case must be tried anew.

But, such is not the point to be made at this juncture. The real point is that lawyers would not exert such efforts in voir dire unless they were satisfied that first impressions are, indeed, lasting impressions. In holding that what transpires in voir dire is, beyond a reasonable doubt, of lesser importance, the majority has pitted itself against the collective wisdom of the trial bar for generations past.

Having rejected *Robillard*, the majority has presented only one case upon which it places reliance to control its decision, *Zaiontz v. State*, 700 S.W.2d 303 (Tex.App. —San Antonio 1985, pet. ref'd). The *Zaiontz* court carefully pointed out that *no objection* had been lodged in the trial court. In the case at bar, counsel objected and continued to object, all without avail. Further attempts to distinguish *Zaiontz* would be surplusage. As this dissenter

reads the majority opinion, the decision contains no guiding authority.

The narrow ground of disagreement between the majority and the dissent is whether the admitted error was harmless and whether it has been established, "beyond a reasonable doubt, that the error made no contribution to the conviction or the punishment." Tex.R.App.Proc., R. 81(b)(a). I cannot accept that the test has been met. I dissent. The case must be reversed and remanded for new trial.