**56**

UNITED STATES of America, Appellee,

v.

Domingo ZAYAS, a/k/a Luis Nunez, a/k/a Luis Machado, a/k/a Luisito, Orlando Machado, a/k/a Julito, Luis Nunez-Ramos, a/k/a Indio, Carlos Rivera-Santiago, a/k/a Carlitos, Angelo Roche, a/k/a The Old Man, Jose Velasquez, a/k/a Vaquero, a/k/a Cowboy, Fabian Rodriquez, Antonio Morales, a/k/a Tony the Mechanic, Anthony Rodriquez, a/k/a Little Tony, Defendants-Appellants.

Nos. 752, 797–804, Dockets 77–1465 – 77–1470, 77–1473, 77–1475, 78–1008.

United States Court of Appeals, Second Circuit.

Argued April 14, 1978.

Decided April 28, 1978.

James A. Moss, Asst. U. S. Atty., New York City (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, Richard F. Ziegler and Richard Weinberg, Asst. U. S. Attys., New York City, on the brief), for appellee.

Jerome A. Landau, New York City, on the brief, for defendant-appellant Domingo Zayas.

John J. Broderick, Syosset, N. Y., for defendant-appellant Orlando Machado.

Theodore Krieger, New York City, for defendant-appellant Luis Nunez-Ramos.

Hugh Cunniffe, New York City, for defendant-appellant Carlos Rivera-Santiago.

O'Rourke, McGovern & Degen, and Ronald D. Degen, New York City, on the brief, for defendant-appellant Angelo Roche.

Kenneth Linn, New York City, on the brief, for defendant-appellant Jose Velasquez.

Robert Mitchell, New York City, on the brief, for defendant-appellant Fabian Rodriguez.

Michael P. Stokamer, New York City, on the brief, for defendant-appellant Antonio Morales.

Bonnie P. Josephs, New York City, for defendant-appellant Anthony Rodriguez.

Before LUMBARD, MANSFIELD and MESKILL, Circuit Judges.

PER CURIAM:

Luis Nunez-Ramos and eight codefendants appeal from their convictions after a six-week jury trial before Judge Broderick in the Southern District of New York on charges of a conspiracy to violate the narcotics laws. We affirm.

The conspiracy involved a quick response of a number of narcotics traffickers to the opportunity provided by the 1973 heroin panic in New York City. As white heroin, normally plentiful, became unavailable on the streets, one Fernando Gallardo and his associates apparently resolved to step into the breach by procuring a supply of Mexican "brown rock" heroin through California sources. Defendants here were charged with being couriers and distributors within the Gallardo organization.

The first contention we address is that defendants' trials ought to have been severed from each other to avoid prejudice. A comparison between the instant case and *United States v. Moten*, 564 F.2d 620 (2d Cir. 1977), will demonstrate that this alleged conspiracy was well within the bounds—of both size and complexity—inside of which we have ruled that no prejudice is caused by a joint trial.

Defendant Carlos Rivera-Santiago alleges that the government improperly led him to believe that he would have to establish an alibi for the last two weeks of October, 1974, and did not disclose until trial that the relevant period was, in fact, earlier in October. This argument fails for a number of reasons. First, the government never assured Santiago that he could limit his alibi to the last two weeks in October. Rather, the entire month of October was specified; only preliminarily did the government estimate that the relevant period would probably be the third and fourth weeks. If Santiago chose to hazard all on this speculation, the risk of disappointment was his. Moreover, he had four weeks after he was advised of the true period involved before he had to put on his defense. Despite at least two trips to Puerto Rico in that time, Santiago was unable to

adduce any additional alibi evidence; indeed, to this day he has not pointed to any evidence that he might have been able to present at trial had he known earlier what the relevant period was. Accordingly, he has failed to show any prejudice.

 Defendant Orlando Machado asserts that he was prejudiced by the presentation to the jury of evidence—mistaken identification by a government witness—that was not disclosed to him before trial. In the first place, as Machado's counsel candidly acknowledged, the effect of the misidentification could only have been favorable to Machado in the eyes of the jury. Once the government had conceded that a crucial witness had erred in identifying Machado, it was in Machado's interest that trial continue with the same jury, free to draw from the incident conclusions unfavorable to the reliability of the witness, and therefore helpful to Machado. Moreover, any prejudice that could conceivably have resulted was clearly avoided by Judge Broderick's prompt and repeated curative instruction.

Of some greater weight is the contention that the government attorney introduced an improper element into his summation when he stated, "if you think that I, if you think that [co-counsel] or any other federal agent would jeopardize his or her career beyond a reasonable doubt to convict these people by doing such a thing [putting thoughts in witnesses' minds], then take about 30 seconds in your deliberations; if you think that is what happened here, come back in 30 seconds and acquit every one of them . . . ." It is true that we have said, and continue to believe, that such statements in summations go beyond the bounds of propriety. But it is equally true that we have permitted convictions to stand in the face of similar, or even more objectionable, language in the government's summation, when the defense has put in issue the question of the government's integrity in its handling of its witnesses. *See, e. g., United States v. Tramunti,* 513 F.2d 1087 (2d Cir.), *cert. denied,* 423 U.S. 832, 96 S.Ct. 54, 46 L.Ed.2d 50 (1975); *United States v. Benter,* 457 F.2d 1174 (2d Cir.),

*cert. denied,* 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 82 (1972). We conclude that, in the circumstances of this case, the prosecutor's remark does not constitute reversible error.

We have considered the defendants' other arguments and find that they are without merit. Accordingly, the convictions are affirmed.